# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BECKLEY

JAMES CHRISTIAN, and
TINA CHRISTIAN,

      Plaintiffs,

v.                                                                CIVIL ACTION NO. 5:24-cv-00673

PINN MC WIND DOWN CO., LLC,
*formerly known as* Pinnacle Mining Company, and
BLUESTONE RESOURCES, INC., and
ALPHA METALLURGICAL RESOURCES, INC.,
*formerly known as* Contura Energy, Inc., and
BROOKS RUN SOUTH MINING, LLC,

      Defendants.

## MEMORANDUM OPINION AND ORDER

On March 12, 2026, the Court directed the parties to "submit supplemental briefing on the question of how, if at all, the retained jurisdiction provision(s) in (1) the Sale Approval Order of the United States Bankruptcy Court for the Northern District of Alabama, and (2) the related Asset Purchase Agreements, impact the Court's ability to resolve the ownership and responsibility issues raised in the parties' Summary Judgment briefing [ECFs 46–53, 56]." [ECF 80]. Defendants Bluestone Resources, Inc. ("Bluestone") and Alpha Metallurgical Resources, Inc. ("Alpha") filed their Joint Supplemental Briefing of Defendants Regarding Retention of Jurisdiction Provisions in Sale Approval Order and Asset Purchase Agreements on April 10, 2026. [ECF 82]. Plaintiffs James and Tina Christian (the "Christians") responded on April 24, 2026. [ECF 83]. Alpha and Bluestone replied on May 1, 2026. [ECF 84]. The matter is ready for adjudication.

**I.**

*A.     Factual Background*

This action arises from mine drainage that damaged the Christians' property beginning in 2023. [ECF 1-2 ¶¶ 6-7]. The Christians contend that the "illegal discharge of foul-smelling, noxious, foamy, and potentially hazardous mine drainage" has "eroded [their] property, necessitated the removal and loss of their heat pump, invaded the underpinning of their dwelling and structures, eroded the foundation of their dwelling and thereby damaged it, contaminated their well and drinking water, and interfered with the use of [sic] enjoyment of their private property." [*Id.* ¶¶ 6, 11]. In 2023, the Christians complained to the West Virginia Department of Environmental Protection ("WVDEP") about the mine drainage -- also referred to as "artesianing" which is the industry term used "when water in an underground [mine] void becomes pressurized to the point that it emerge [sic] somewhere at the surface under pressure." [*Id.* ¶ 7].

The WVDEP investigated the Christians' complaints, and a WVDEP inspector found the artesian issue arose from a mine associated with WVDEP Permit U-0204-83 ("Permit 83"). According to deposition testimony of WVDEP Inspector Matthew Dillon, Permit 83 is the permit for the deep mine within the Pinnacle Mine Complex, with coal being extracted from the Pocahontas No. 3 coal seam. [ECF 46-2 at 21:23-22:5, 110:23-111:1]. Specifically, the mine drainage arose from "the elevation of Mine Pool 8A, which is part of the mine complex associated with [Permit 83]." [ECF 1-2 ¶ 10]. That mine complex is generally referred to as the Pinnacle Mine Complex. The WVDEP investigation found that water "has been rising consistently since at least May 2019, and that Mine Pool 8A has been at or near the surface elevation since March 2022." *Id.* Testing of the mine drainage revealed "the presence of sulfur compounds and sulfur-eating bacteria" along with "the presence of aluminum, iron, manganese, and sulfurous compounds in the

discharge[.]" [*Id*. ¶¶ 14-15].

The mine drainage affecting the Christians' property arose from the No. 50 mine within the Pinnacle Mine Complex, formerly owned by Pinnacle Mine Company, which operated under Permit 83. [ECF 46-1 at 7]. The No. 50 Mine operated from 1968 until 2018, first started by U.S. Steel Corporation (now U.S. Steel Mining Company, LLC), and in 1983 the U.S. Steel Mining Company, Inc., permitted the mine under Permit 83. In 2018, Pinnacle Mining Company held Permit 83. [*Id*. at 6-7]. The No. 50 mine ceased operations under Permit 83 in 2018 because Pinnacle Mine Company, as a subsidiary of Mission Coal Co., filed a voluntary petition for bankruptcy in October 2018. [ECF 46-1 at 6; ECF 46-3 at 6]. Accordingly, the mine associated with Permit 83 is no longer considered to be active. As a result of the bankruptcy proceedings, Pinn MC Wind Down Co., LLC ("Pinn Wind Down"), formerly known as Pinnacle Mining Company, is presently listed as the permit holder of Permit 83.

Following the investigation of the mine drainage, the WVDEP issued an imminent harm cessation order against Pinn Wind Down on February 21, 2023. [ECF 48-3 at 4]. Then in March 2023, the WVDEP filed a complaint in the Circuit Court of Wyoming County which included a demand for a preliminary injunction against Pinn Wind Down. [*Id.*; ECF 1-2 ¶ 8]. In a letter to Representative Carol Miller, WVDEP Director Jonathan Rorrer explained the WVDEP pursued litigation over the matter "as an additional enforcement instrument due to the imminent harm situation created." [ECF 48-3 at 4].

Although the WVDEP named only Pinn Wind Down as a defendant in the state court complaint, Bluestone and Alpha were named as third-party defendants in the litigation. [ECF 46-5 at 2]. Specifically, Pinn Wind Down added Bluestone as a party to the litigation alleging "Bluestone is subject to an Agreed Order before the Bankruptcy Court obligating Bluestone to

3

assume [Permit 83] and abate any outstanding violations." [*Id.* at 5-6]. Despite admitting to those allegations, Bluestone then moved for its own preliminary injunction, alleging Alpha was responsible for mitigating the violations alleged by the WVDEP. [*Id.*]. That action was resolved by stipulation of dismissal in September 2025. *Dep't of Env't Prot. v. Pinn MC Wind Down Co.*, *LLC,* No. CC-55-2023-C-23, Doc. No. 778 (Wyo. Cnty. Cir. Ct. September 23, 2025).

As highlighted in Alpha's Response to Bluestone's Motion for Preliminary Injunction filed in the state court action, Pinn Wind Down, Alpha, and Bluestone each denied responsibility for remediating the mine discharge that affected the Christians' property. [ECF 46-5 at 4-6]. The disagreements about ownership and responsibility for mitigation of the mine discharge issues arose by virtue of ownership transfers that occurred following Pinnacle Mining Company's bankruptcy proceedings in 2019. [*Id.*]. The ownership and liability disputes that arose in state court, and are now presented here, necessitate a discussion of the bankruptcy proceedings that transferred certain Pinnacle Mining Company assets to Alpha and Bluestone.

### B.    *Bankruptcy Proceedings*

On April 15, 2019, the United States Bankruptcy Court for the Northern District of Alabama ("bankruptcy court"), entered its order (1) Approving the Sales of the Acquired Assets Free and Clear of Claims, Liens, Interests, and Encumbrances, (2) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (3) Granting Related Relief. [ECF 48-4 at 2, 45]. The bankruptcy court also approved the transfer of the Pinnacle Mine Company assets to Bluestone, Alpha, and WPP LLC. [*See* ECF 48-4]. The assets Bluestone and Alpha acquired were memorialized in the Bluestone Asset Purchase Agreement ("Bluestone APA") and the Contura -- now doing business as Alpha -- Asset Purchase Agreement ("Alpha APA"), respectively. [*Id.* at 88-574].

4

In approving the sale of the Pinnacle Mine Company assets, the bankruptcy court noted, "assumption of the applicable Assumed Liabilities by the Buyers pursuant to the APAs is integral to the APAs and is in the best interests of the Debtors, their estates, and their creditors and represents the reasonable exercise of sound and prudent business judgment by the Debtors." [ECF 48-4 at 11]. The approval order acknowledged the purchase of the "Acquired Assets free and clear of all then existing or thereafter arising liens, claims, interests, encumbrances, and Liabilities, including Excluded Liabilities, *other than the applicable Permitted Encumbrances and subject to the applicable Buyer's assumption of the applicable Assumed Liabilities*." [*Id*. (emphasis added)].

Accordingly, Bluestone and Alpha acquired myriad assets and assumed liabilities from the bankruptcy estate, but the assets and liabilities relevant to the instant case appear to be limited to the mine property associated with Permit 83 and the Pinnacle Mine Complex. Crucially, both the Bluestone and Alpha APAs reference the acquisition of assets related to Permit 83. [*See* ECF 48-4]. Additionally, the Sale Approval Order, and both Bluestone and Alpha's APAs, contain clauses granting the bankruptcy court exclusive jurisdiction over enforcement and resolution of any controversies arising from the Asset Purchase Agreements. [*Id*. at 42–43, 199, 294–95]. The Sale Approval Order Retention of Jurisdiction Clause states:

> The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order, including, without limitation, the authority to: (a) interpret, implement, and enforce the terms and provisions of this Order (including the injunctive relief provided in this Order) and the terms of the APAs (and all related agreements), all amendments thereto and any waivers and consents thereunder; (b) protect the Buyers, or the Acquired Assets, from and against any of the claims, liens, interests, Liabilities, or encumbrances; (c) compel delivery of all Acquired Assets to the Buyers; (d) compel the Buyers to perform all of their obligations under the APAs; and (e) resolve any disputes arising under or related to the APAs, any related disputes or the Sales of the Acquired Assets.

[*Id*. at 42–43.]. The APA Jurisdiction Clauses state:

(b) Without limitation of any Party's right to appeal any Order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby and (ii) any and all claims relating to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent and submit to the exclusive jurisdiction and venue of the Bankruptcy Court and irrevocably waive the defense of an inconvenient forum to the maintenance of any such Action or Proceeding. . .

(c) THE PARTIES HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE ACTIONS OF THE SELLERS, BUYER OR THEIR RESPECTIVE REPRESENTATIVES IN THE NEGOTIATION OR PERFORMANCE HEREOF.

[*Id*. at 199, 294–95].

## C.    *Procedural History*

On May 24, 2024, the Christians instituted this action against Pinn Wind Down, Bluestone, and Alpha in the Circuit Court of Wyoming County. [*See* ECF 1-1 at 8-11]. The Circuit Court granted the Christians' Motion to Amend on October 29, 2024. [*Id*. at 108]. In their First Amended Complaint, the Christians added Brooks Run South Mining, LLC, as a party. [*See* ECF 1-2]. The Amended Complaint asserts four claims, (1) Citizens' Suit for Damages and Fees Under West Virginia Surface Coal Mining and Reclamation Act ("WVSCMRA") § 22-3-25(f), (2) Trespass, (3) Private Nuisance, and (4) Public Nuisance. [*See id*.]. In addition to property damage, the Christians claim the "illegal mine discharge has caused Indian Creek [the waterway adjacent to their property] to be foul-smelling, noxious, and, at times, foamy." [*Id*. ¶ 12]. The case was removed to here on November 22, 2024. [ECF 1]. The Court denied the Christian's Motion to Remand on June 17, 2025. [ECF 29].

Bluestone and Alpha each moved for summary judgment on October 13, 2025.

6

[ECFs 46, 48]. Inasmuch as the summary judgment briefing raised questions related to the Bankruptcy Approval Order and APAs, the Court ordered supplemental briefing on March 12, 2026. [ECF 80]. In their opening brief, Alpha and Bluestone contend this action should be dismissed in its entirety because the Christians have no standing or rights pursuant to the APAs. [ECF 82 at 2]. The Christians, on the other hand, request transfer to allow the bankruptcy court to do that which only it can do under the subject APAs, namely, supply the APA ownership adjudications sought in here, before sending the matter back for a merits adjudication. [ECF 83]. In their reply, Alpha and Bluestone contend transfer would not be in the interest of justice because it "should have been clear to Plaintiffs' Counsel at the time of filing" that "claims involving interpretation of the APAs can only be heard by the United States Bankruptcy court for the Northern District of Alabama." [ECF 84 at 6]. Additionally, Bluestone and Alpha reassert that dismissal is appropriate because the Christians "have never articulated a basis for their standing to pursue their contract-based claims against Alpha and Bluestone." [ECF 7].

II.

### A.    *Governing Standard*

It is well settled that "when parties to a contract confer jurisdiction and venue on a particular court, as a general matter federal common law directs courts to favor enforcement of the agreement, so long as it is not unreasonable." *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 649 (4th Cir. 2010); *see also BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 (4th Cir. 2018), *as amended* (Mar. 27, 2018) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). "[F]orum-selection clauses have 'the salutary effect of dispelling any confusion' on the manner for resolving future disputes, thereby slashing the 'time and expense of pretrial motions.'" *Great Lakes Ins. SE v. Raiders Retreat*

7

*Realty Co., LLC*, 601 U.S. 65, 66 (2024) (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94 (1991)). A forum selection clause, however, is only entitled to a "presumption of enforceability. . . if the forum selection clause is mandatory rather than permissive." *BAE Sys. Tech. Sol. & Servs., Inc.*, 884 F.3d at 470 (citing *Albemarle Corp.*, 628 F.3d at 650–51).

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The considerations of § 1404(a) differ slightly, however, when the parties have entered a contract "contain[ing] a valid forum selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). "Although a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a)." *Id.* at 59.

A resisting party may overcome the presumption of enforceability by demonstrating the forum selection clause is unreasonable under the circumstances. *Albemarle Corp.*, 628 F.3d at 651 (citing *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)). "When the parties have agreed to a valid forum selection clause, a district court should ordinarily transfer the case to the forum specified," absent "extraordinary circumstances unrelated to the convenience of the parties." *Atl. Marine Const. Co.*, 571 U.S. at 62. "The presence of a valid forum-selection clause [thus] requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* at 63.

First, the plaintiff's choice of venue bears no weight. *Id*. Instead, "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is

8

unwarranted." *Id.* Second, the district court "should not consider arguments about the parties' private interests." *Id.* at 64. And "[t]hird, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* Simply put, only the public interest factors may weigh against transfer. *Id.* Such factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 63 n.6. But, given that "those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64.

## B.    *Analysis*

The Court here, of course, deals not with a forum selection clause. Much more than a forum choice is here involved. Instead, the retention of jurisdiction clauses in the APAs grant "exclusive jurisdiction" to the bankruptcy court, and the clause is presumed enforceable. [ECF 48-4 at 199, 295]; *BAE Sys. Tech. Sol. & Servs., Inc.*, 884 F.3d at 470. The focus is properly upon whether "extraordinary circumstances" or "public interest considerations" weigh against transfer. *Atl. Marine Const. Co.*, 571 U.S. at 62–63.

First, none of the parties have set forth any extraordinary circumstances for the Court to consider prior to transfer. Second, though the court anticipates some delay by transferring the case, there is no indication that "court congestion" would cause substantial "administrative difficulties" in the instant case. *Id.* Next, although the resolution of environmental harms to West Virginia property is surely within the type of "localized controvers[y]" one would like to be "decided at home" -- the bankruptcy court is entitled to exercise that jurisdiction it has properly

reserved to itself. *Id.*

For similar reasons, the "interest in having the trial of a diversity case in a forum that is at home with the law" is outweighed by the necessity of resolving the ownership issues which have prevented the Christians from receiving redress for the environmental damage to their property. *Id.* at 63 n.6. Inasmuch as the mine void under Permit 83 was part of the Pinnacle Mine estate, determination of the ownership -- and coincidingly liability for remediation -- is, without question, most appropriately resolved by the court that entered the order approving the original sale of the assets. Accordingly, the Court finds the retention of jurisdiction clause and the interests of justice weigh in favor of transfer.

On one final note, both Alpha and Bluestone contend that, even if the APAs did establish responsibility for remediation of the harm under Permit 83, the Christians cannot enforce the APAs because they are not parties to those agreements. Accordingly, they contend transfer is not in the interest of justice. This argument lacks merit. Alpha and Bluestone produced their APAs on the record to prove they were neither owners nor operators under Permit 83. [*See* ECFs 47, 49]. The Christians rebutted those assertions. [*See* ECFs 50, 51]. The Defendants' disagreement about reclamation liabilities under the APAs exists separately from the Christians' claims in tort and under WVSCMRA. The Christians bring their claims, in part, under WVSCMRA's Citizens Suits provision which states in relevant part:

> Any person or property who is injured through the violation by any operator of any rule, order or permit issued pursuant to this article may bring an action for damages, including reasonable attorney and expert witness fees, in any court of competent jurisdiction. Nothing in this subsection affects the rights established by or limits imposed under state workers' compensation laws.

W. Va. Code § 22-3-25(f). Thus, if, by virtue of their ownership rights and duties under the APAs, Bluestone or Alpha are found to be operators, they are subject to the claims presented by the

Christians in the instant case. Accordingly, resolving the ownership issues is crucial to resolution of the Christians' claims -- and those issues shall be appropriately resolved pursuant to the retained jurisdiction clauses in the APAs. Thus, all factors weigh in favor of transferring this matter to the bankruptcy court.

## III.

Pursuant to the foregoing discussion, the Court **ORDERS** this matter be **TRANSFERRED** to the United States District Court for the Northern District of Alabama, with referral thereafter as the transferee district court deems appropriate with reference to Case No. 18-04177-TOM11, ECF 1323. The Motions for Summary Judgment [**ECFs 46, 48**] are **DENIED WITHOUT PREJUDICE**. All other pending motions [**ECFs 54, 55, 56, 69, 70, 85, 91**] are **DENIED AS MOOT**.

It is further **ORDERED** that this action be, and it hereby is, **STAYED** and **RETIRED** to the inactive docket pending transfer back to this Court by the transferee district.

The Clerk is directed to transmit a copy of this Order to counsel of record and any unrepresented party.

ENTER:        June 29, 2026

Frank W. Volk
Chief United States District Judge

11